UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

MILANA YURYEVNA SWOPE,

    Petitioner,

v.

                No. 1:26-CV-047-H

MARCELLO VILLEGAS, et al.,

    Respondents.

## ORDER

Milana Yuryevna Swope is in ICE custody to enforce an indisputably valid order of removal issued against her in 2003. Swope asserts that her re-detention in September 2025 violated DHS's internal regulations and that DHS's conduct violates the Due Process Clause of the Fifth Amendment. Relatedly, she asserts that there is no significant likelihood of removal to her native Russia in the reasonably foreseeable future. For each of these reasons, she petitions the Court for a writ of habeas corpus.

The petition (Dkt. No. 1) is denied. Any procedural violations in Swope's re-detention were harmless; ICE's conduct in re-detaining Swope comports with due process; and, since a significant likelihood of removal exists in the reasonably foreseeable future, her ongoing detention comports with due process. Swope is thus not entitled to relief.

## 1.     Background

Swope lawfully entered the United States in 2001 on a K-1 fiancée visa. Dkt. No. 1 ¶ 31. Two years later, an immigration judge granted Swope voluntary departure. *Id.* ¶ 32. When she failed to depart the United States, her voluntary departure order converted into a

final order of removal.  *Id.*  In 2007, ICE briefly detained Swope to effect the removal order; when this failed, she was released on an Order of Supervision (OSUP).  Dkt. No. 9-1 at 3.

In September 2025, Swope appeared for a routine ICE check-in in compliance with her order of supervision.  Dkt. No. 1 ¶ 3.  ICE revoked the OSUP, detained Swope, and placed her in custody at the Bluebonnet Detention Facility in Anson, Texas.  *Id.* ¶¶ 1, 3.

In February, Swope petitioned for a writ of habeas corpus.  *See id.*  Swope only attached one exhibit to her petition: an EOIR digital listing for her 2003 immigration case, which notes her failed attempt last fall to reopen the matter.  *See* Dkt. No. 1-2.

The Court issued an order to show cause.  Dkt. No. 4.  The respondents timely answered (Dkt. No. 9), indicating that they were in active efforts to return Swope to Russia, that her travel document application had already been submitted to the Russian consulate in Houston, and that ICE removals to Russia had undergone an over seven-fold increase in the last fiscal year.  *See* Dkt. No. 9-1 at 4.  Swope timely replied, dismissing these developments as "conclusory" evidence.  Dkt. No. 10 at 5.

On April 18, 2026, the respondents filed a notice indicating that they intended to remove Swope "from the United States in more than three days."  Dkt. No. 12 at 1.  The short filing does not state when or to where Swope will be removed.[1]  But it at least indicates that removal is imminent.

The petition (Dkt. No. 1) is ripe for review.

---

[1] Because the respondents originally promised "at least three days' notice before executing any removal" (Dkt. No. 7 at 1), it could be that the form means to say "[not] more than three days."

2. **Legal Standards**

   A. **Due Process**

For well over a century, the Supreme Court has held that men and women subject to deportation have at least some measure of due process protection. *See The Japanese Immigrant Case*, 189 U.S. 86 (1903). But the level of process to which they are entitled varies. *Compare Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) (providing a process standard also provided to citizens in the case of a lawful permanent resident), *with DHS v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020) (providing minimal process to an alien apprehended at the border). In this case, the parties propose two different standards of due process: that of *Mathews v. Eldridge*, 424 U.S. 319 (1976), and that of *Zadvydas v. Davis*, 533 U.S. 678 (2001).

Under the *Mathews* test, a Court balances "the interest at stake for the individual, the risk of an erroneous deprivation of the interest through the procedures used as well as the probable value of additional or different procedural safeguards, and the interest of the government in using the current procedures rather than additional or different procedures." *Landon*, 459 U.S. at 34 (citing *Mathews*, 424 U.S. at 334–35).

In contrast, the Supreme Court decided *Zadvydas* and applied its test in the context of detention to enforce a final order of removal under 8 U.S.C. § 1231. Under that statute, the government must ordinarily remove an alien within 90 days of the final order of removal or else release him subject to supervision. 8 U.S.C. § 1231(a)(3). However, Section 1231(a)(6) provides that certain aliens "may be detained beyond the removal period." In *Zadvydas*, the Supreme Court interpreted Section 1231(a)(6) to determine how long the government may detain an alien pending removal under this Section. 533 U.S. at 682. The Court first

determined that challenges to detainment under this provision are available under 28 U.S.C. § 2241, which is the basis of Swope's habeas petition. *See id.* at 688; Dkt. No. 1 ¶ 9. Turning to the merits, the Supreme Court concluded that the government may not detain indefinitely aliens under this provision. *Zadvydas*, 533 U.S. at 699. Doing so would violate due process because such long-term detention requires "a criminal proceeding with adequate procedural protections." *Id.* at 690 (emphasis omitted). Rather, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Courts facing these questions "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.*

A court measures reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* Courts must also "take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien has the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. After meeting this burden, the burden shifts to the

respondents to provide evidence to rebut the alien's showing.  *Id.*  "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."  *Id.*

### B.      The INA Removal Provisions

Federal regulations govern the issues in this habeas petition as well.  8 C.F.R. § 241.4(l)(2)(iii) gives the government discretion to end an OSUP "to enforce a removal order."  Whether changed circumstances have arisen to permit removal are governed by 8 C.F.R. § 241.13.  *See* § 241.4(b)(4).  Section 241.13(a) "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future."  Section 241.13(i)(2) of this regulation provides that "[ICE] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

### 3.      Analysis

Swope challenges her detention on three grounds, two of which challenge the process of her re-detention, and a third that challenges her detention as it stands.  The first and last claim implicate both the INA and due process, while the second only implicates due process.  The Court addresses each claim in turn and finds that Swope is not entitled to habeas relief.

A.    **Even assuming that the respondents did not follow the procedural requirements of the INA's implementing regulations, Swope would not be entitled to habeas relief because any error was harmless.**

Swope states that the respondents are bound by certain "mandatory procedures governing the revocation of an [OSUP]," including a requirement to provide "notice of the reasons for revocation and a prompt opportunity to respond." Dkt. No. 1 ¶ 41 (citing 8 C.F.R. §§ 241.4, 241.13). She contends that the respondents' conduct in re-detaining her violates both these regulations and due process. In turn, the respondents suggest that any noncompliance is implausible, because the fact Swope immediately retained immigration counsel suggests that she "was informed by ICE that they intended to remove her pursuant to the outstanding order of removal." Dkt. No. 9 at 4–5.

For the purpose of this analysis, the Court assumes that the respondents have yet[2] to follow the procedural requirements of Sections 241.4(l) and 241.13(i)(3) and the factors for consideration in Section 241.13(f). Harmless error applies in immigration cases generally. *Rangel-Betancourt v. Barr*, 820 F. App'x 253, 255 (5th Cir. 2020) (citing *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010)); *Jalloh v. Garland*, No. 202117, 2023 WL 1859918, at *2 (4th Cir. Feb. 9, 2023) (citing *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004)) (further citation omitted). The same is true for an agency's procedural violations. *See City of Arlington v. FCC*, 668 F.3d 229, 243–44 (5th Cir. 2012). Under a harmless-error analysis, the party asserting error bears the burden of demonstrating prejudice. *Id.* at 243.

---

[2] The Court notes that there is no particular timeline in which these procedures must happen. The procedures all take place after the alien is detained, so they are not precursors to detention. *See* 8 C.F.R. § 241.13(i)(3) (providing that these procedures arise "promptly after [an alien's] return to [ICE] custody").

The facts here are materially similar to a recent decision of this Court, *Nguyen v. Noem*, 797 F. Supp. 3d 651 (N.D. Tex. 2025).  There, the petitioner challenged his detention process as a violation of Section 241.13(i)(3), which governs revocation of an OSUP for removal.  Section 241.13(i)(3) requires "notice, an informal interview, and a limited opportunity to respond and present information regarding the changed circumstances."  *Id.* at 663.  Here, as in that case, Swope has had the opportunity to obtain counsel, to make a full argument to a federal court regarding her detention, submit evidence, and respond to the respondents' argument.  As a result, Swope "has clearly been given notice because the respondents have fully explained through briefing and declarations the basis for their conclusion."  *Id.*  Because Swope has received more than full notice and an opportunity to be heard, even if the respondents failed to conform to the regulations set forth in Section 241.4(l)(1) and the factors for consideration in re-detention in Section 241.13(f), any error is now harmless in light of the procedures in this case.  There is no basis, on these grounds, for ordering Swope's immediate release.  Because habeas is not backward-looking, the process provided now renders forward-looking relief separately inappropriate.  *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention."); *Lane v. Williams*, 455 U.S. 624, 631 (1982) (explaining that where detainment or its consequences have expired, a habeas petition is moot); *Nguyen*, 797 F. Supp. 3d at 670 (same).[3]

---

[3] While Swope cites a Western District of Texas addressing the failure of the government to abide by the same regulations as a matter of due process, that decision did not address whether any such error was harmless.  *See Gurung v. Warden, S. Tex. ICE Processing Ctr.*, No. SA-25-CA-1614, 2026 WL 93145 (W.D. Tex. Jan. 6, 2026).  Thus, for the same reasons, Swope's due process challenge challenging the respondents' failure to abide by the regulatory requirements here fails, too.

**B.**    *Zadvydas*—not *Mathews*—governs this habeas petition.

Relatedly, Swope argues that "the three-factor balancing test of *Mathews v. Eldridge* is employed to determine whether civil detention . . . violates procedural due process." Dkt. No. 10 at 4 (citation omitted). Thus, she says, the "[d]enial of notice and a pre-deprivation hearing is a violation of [her] procedural due process rights." *Id.* at 3. This claim stands apart from the narrow regulatory and related due process claims addressed above. In essence, Swope argues that even if *no* such regulatory provision governed the re-detention process, identical protections must be gleaned from the Due Process Clause. That assertion, however, is mistaken.

The Court previously addressed the application of *Mathews* to removal cases in *Ladak v. Noem*, 814 F. Supp. 3d 712 (N.D. Tex. 2025). There, the Court observed that the assumption that *Mathews* applies de facto to detention claims "runs counter to precedent." *Id.* at 725. In *Dusenbery v. United States*, the Supreme Court explained that it has "never viewed *Mathews* as announcing an all-embracing test for deciding due process claims." 534 U.S. 161, 167–68 (2002). More obviously, in many "immigration-detention challenges, the Supreme Court has not relied on the *Mathews* framework." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1214 (9th Cir. 2022) (Bumatay, J., concurring) (citing *Demore v. Kim*, 538 U.S. 510, 521–31 (2003); and *Reno v. Flores*, 507 U.S. 292, 299–315 (1993)). Chief among these is *Zadvydas* itself. The Supreme Court interpreted Section 1231 to contain a measure of due process protections "to avoid a serious constitutional threat." 533 U.S. at 699. It is not as if the Supreme Court intended to integrate *Mathews* into its reasoning: it cited *Landon* to acknowledge that "the nature of [due process] may vary depending upon status and

– 8 –

circumstance" and then proceeded with its own distinct test for due-process protection.  *Id.* at 694.

Even if the Court were to set aside the *Mathews* three-factor test's conspicuous absence in *Zadvydas*, *Demore*, and *Reno*, application of the *Mathews* test is unwarranted on the test's own terms.  As the Supreme Court explained in *Landon*, "[t]he constitutional sufficiency of procedures provided in any situation . . . varies with the circumstances."  459 U.S. at 34.  *Landon* distinguished its peculiar type of immigration case—involving a longtime lawful permanent resident—from border detentions of aliens at the border or returning lawful permanent residents who had spent time abroad.  *Id.* at 32–33.  By contrast, aliens detained at the border are only entitled to "the procedure authorized by Congress." *Thuraissigiam*, 591 U.S. at 138–39 (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)).

Here, Swope fits firmly into the latter category.  As *Thuraissigiam* explains, "aliens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'"  *Id.* at 139 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)).  Swope is one such alien: she entered the United States in 2001 on a visa and was ultimately ordered removed in 2003.  *See* Dkt. No. 1 ¶¶ 31–32.  She is here illegally and only remains because the United States has failed to remove her.  "[She] is therefore only entitled to a more limited form of process."  *Ladak*, 814 F. Supp. 3d at 726 (citing *Thuraissigiam*, 591 U.S. at 139).

Finally, the most persuasive reading of *Zadvydas* is not that it provides a due-process test in addition to *Mathews*, but that it supplants it outright.  As the Sixth Circuit explained,

"the Supreme Court has had occasion to consider the constitutional implications of indefinite detention under [Section] 1231(a).  In applying the canon of constitutional avoidance, the Court offered us a standard through which to judge indefinite-detention cases—the *Zadvydas* standard . . . ."  *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020).  "In other words, the *Zadvydas* standard *is* due process: a [Section] 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation."  *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (emphasis in original).

Accordingly, the only relevant test here is to determine whether Swope is significantly likely to be removed in the reasonably foreseeable future.  If that is the case, then Swope "is deprived of no liberty by [her] detention anticipating removal consistent with the protections set forth in that case."  *Ladak*, 814 F. Supp. 3d at 730.

> **C.      Because circumstances have changed and there is now a significant likelihood that Swope may be removed to Russia in the reasonably foreseeable future, the respondents did not violate the INA's implementing regulations or the Fifth Amendment.**

Last, Swope challenges her ongoing detention because the respondents have failed to identify "any changed circumstances justifying [her] re-detention after years of supervised release."  Dkt. No. 1 ¶ 51.  While much of Swope's briefing focuses on what she believes ICE ought to have done before re-detaining her, rather than whether such circumstances now exist, the question is necessarily implicated.  Again, as discussed, above, "*Zadvydas* . . . *is* due process."  *Castaneda*, 95 F.4th at 760 (emphasis in original).  So, the Court must ask whether Swope is significantly likely to be removed in the reasonably foreseeable future.

"But before turning to the merits of this discussion, the Court must consider the appropriate standards."  *Nguyen*, 797 F. Supp. 3d at 665.  The operative language is that ICE "may revoke an alien's release under this section and return the alien to custody if, on

account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). "This regulation gives the decision-making power primarily to ICE and not to this Court," such that the Court's review "is necessarily limited." *Nguyen*, 797 F. Supp. 3d at 666. To prevail, the respondents need only establish "a significant likelihood that removal in the reasonably foreseeable future may occur," rather than "be certain or immediate." *Id.* at 666–67 (citing 8 C.F.R. § 241.13(i)(2)).

The facts in this case are straightforward. The unrebutted evidence in this case is that the respondents have submitted a travel document application to Russia and that successful removals to that country have increased seven-fold in the last fiscal year. Dkt. No. 9-1 at 4. Moreover, the government now represents that Swope will be removed in a matter of days. *See* Dkt. No. 12. That evidence is sufficient to establish the requisite likelihood of removal.

Swope offers nothing in response, except to claim that this showing is "conclusory" and that "[t]he general statistics of noncitizens removed to Russia . . . are insufficient to show that [the] Respondents are actually able to remove Petitioner, specifically, in the near future." Dkt. No. 10 at 5. But as the Court explained in *Nguyen*, "there is no reason that a broad change in circumstances that applies to a broad group of aliens cannot have the effect of changing the circumstances of each of those particular aliens and thus let ICE determine that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 797 F. Supp. 3d at 666. If nothing else, the respondents' brief notice as to imminent removal (Dkt. No. 12) is proof of that.

**4.      Conclusion**

To the extent the respondents failed to follow their own internal regulations, the process Swope has received in this Court is such that any past error is now harmless. Moreover, due process requires nothing more than a determination that Swope's removal is significantly likely in the reasonably foreseeable future; other questions, such as her law-abidingness, flight-risk potential, and so forth, are not necessary to answer.  Since the respondents have shown the requisite likelihood of removal, Swope's petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on April 20, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE